BOSTON AND FAIRHAVEN IRON WORKS *vs.* CHARLES MONTAGUE & another.

Bristol.   Oct. 26, 1882. — Sept. 6, 1883.   C. ALLEN, COLBURN & HOLMES, JJ., absent.

The plaintiff began the manufacture of machines for the defendant under an oral contract.  After a considerable amount of labor and materials had been furnished, a written contract was made between the parties, by the terms of which the plaintiff was to receive payment for completed machines on delivery.  Subsequently, and before any machines had been completed, but after much work had been done, which, although necessary for the construction of all the machines, could not enter into the cost of any particular machine, the written contract was superseded by another written contract, by the terms of which all items furnished before the date of that contract were to be paid for under it, and the defendant acknowledged his indebtedness for work previously done.  *Held*, in an action on the last contract, that the defendant was not entitled to a ruling, that the plaintiff could not recover, under it, for work and labor performed before its date.

The plaintiff agreed, in writing, to manufacture for the defendant certain machines, and to deliver them to his order ; and the defendant agreed to pay the plaintiff for all labor and materials used or furnished for the machines at a specified rate, and, in addition thereto, ten per cent of the cost.  The defendant further agreed to remit to the plaintiff for each machine the amount due for the manufacture and delivery of the same, and, in addition thereto, all surplus of profits which should result to the defendant, after deducting expenses of sale and subsistence, until the defendant's existing indebtedness to the plaintiff should be liquidated, " all and each of said remittances to be made immediately on receipt of sale of each machine."  *Held*, that, on delivery of the machines, the plaintiff was entitled to maintain an action for the labor and materials furnished.

The plaintiff agreed, in writing, to manufacture machines for the defendant, and to deliver them to his order ; and the defendant agreed to pay for them at a specified rate, and in addition thereto all surplus profits until the defendant's existing indebtedness to the plaintiff should be liquidated, on receipt of sale of each machine.  This agreement was subsequently modified by an agreement that the plaintiff should be exclusively entitled to receive payment for machines sold, and should pay over to the defendant one fourth of the surplus of receipts above the cost of machines.  *Held*, in an action for the price of manufacturing the machines, that the defendant was not entitled to a ruling, that, under the contract as modified, the defendant was liable, if at all, only for money had and received.

The plaintiff agreed to manufacture machines for the defendant, and to deliver them to his order, the defendant to pay the expense of transportation.  *Held*, that the agreement was performed by manufacturing the machines and holding them subject to the defendant's order.

The plaintiff manufactured a machine for the defendant, under an agreement by which the defendant was to pay the price of manufacture.  The defendant did not take the machine, and it was subsequently sold by the plaintiff's assignee

in bankruptcy. *Held*, that the plaintiff could maintain an action for the agreed price on giving the defendant credit for the proceeds of the sale.

The plaintiff manufactured machines for the defendant under a contract. After the machines were delivered to purchasers, they were returned for some fault or defect, and were repaired. *Held*, that the mere fact that these repairs were made after the contract had terminated would not prevent the plaintiff from maintaining an action for the repairs.

If a deposition is taken on written interrogatories, one of which calls for the production of a memorandum-book, and is not objected to, it is too late at the trial to object to the book, if it is annexed to the deposition.

In an action on an account annexed, if certain items are satisfactorily proved, they should not be struck out merely because they do not appear in the plaintiff's books of account.

W. ALLEN, J. The first count of the plaintiff's declaration is upon an account annexed; the second count is the common count for labor and materials furnished by the plaintiff to the defendants; and the third count is for labor and materials furnished under a written contract. The bill of particulars of the second and third counts is the account declared on in the first count; but that account, besides items for labor and materials, contains sundry items for money paid, and a part of the items bear date prior to the written contract. The case was referred to an auditor, who found certain facts in his report, and, upon the whole evidence, found for the plaintiff. At the trial, in this court, without a jury, the Chief Justice found for the plaintiff, and the case comes before us upon exceptions to the refusal of the court to make certain rulings prayed for by the defendants, upon the facts and statements contained in the auditor's report.

The plaintiff's count is for labor and materials supplied in the manufacture of certain machines, and for advances relating to such manufacture. The defendants held letters patent for the machines, and owned the patterns and draughts used in manufacturing them, and the plaintiff began the manufacture of them for the defendants in September, 1865, under a verbal contract. On January 3, 1866, a contract in writing was made, which was superseded on February 20, 1866, by the written contract between the parties to this suit, which is the one mentioned in the third count of the declaration, and which was modified, in some particulars, by a writing dated November 16, 1866.

We will consider the requests of the defendants for rulings, which were refused, in the order in which they are numbered in the exceptions.

1. The second ruling requested by the defendants was to the effect that all the charges in the plaintiff's account prior to February 20, 1866, came under the contract of January 3, and that, by that contract, the plaintiff could not charge for items of labor and materials, but only specifically for machines finished and delivered. That contract was not made until a considerable amount of labor and materials had been furnished; it was between the plaintiff, of the one part, and the firm of Montague and Company, of the other part, and provided for the manufacture of machines by the plaintiff for Montague and Company, from designs and patterns to be furnished by them, and for payment to be made for completed machines upon delivery. On February 20, no machines had been delivered or completed, and a considerable part of the work which had been done by the plaintiff was such as, although necessary for the construction of the machines, could not enter into the cost of any particular machine. This work had been done under the direction and virtual superintendence of the defendants, and their indebtedness for it was acknowleged in the contract, and there was also evidence of a subsequent admission of it by the defendants. By the contract of February 20, all the items which had been furnished before that time, and which entered into the construction of machines thereafter finished and delivered, were to be paid for under that contract, and that would include all the items that entered into the construction of machines under either contract, as none were finished before that date. The answer to this exception of the defendants is, then, twofold: first, there was evidence of an admission and acknowledgment of indebtedness for the items charged; and, second, in the absence of such evidence, the liability of the defendants for those items would not be under the contract of January 3, but under that of February 20.

2. In their third request for instructions, the defendants asked for three rulings: that, under the contract of February 20, the plaintiff could not recover upon a bill of items for labor and materials, but only for finished machines; that there was no sufficient evidence of a delivery of machines; and that the plaintiff could recover only upon allegation and proof that the defendants had received proceeds of the sales of machines.

By that contract, the plaintiff agreed to manufacture for the defendants, and to deliver to their order, printing-presses and paper-cutters ; and the defendants, in consideration of such manufacture and delivery, agreed to pay the plaintiff for all labor and materials used or furnished for the machines, at a specified rate for the different kinds of each, subject to variation as the prices of labor and materials should vary, and, in addition thereto, ten per cent of such cost.   The plain meaning is, that, upon the delivery of machines, the defendants would pay for the items of labor and materials used or furnished in their construction ; and the declaration is properly for such items.

The auditor found that there had been a delivery of all the machines for the construction of which the plaintiff charges. Whether the evidence was sufficient to sustain that finding will be considered below.   After providing that the defendants shall pay the cost of the machines, and the amount above stated in addition thereto, and the internal revenue taxes and expenses of delivery upon finished machines, the contract further provides that the defendants shall remit to the plaintiff for each machine the amount due for the manufacture and delivery of the same, and in addition thereto all surplus of profits which shall result to the defendants, after deducting expenses of sale and of subsistence, until their indebtedness to the plaintiff shall be liquidated, "all and each of said remittances to be made immediately on receipt of sale of each " machine.   The defendants contend that the effect of this provision is that nothing would become due from them under the contract until they should have received proceeds of sales made by them of machines, and only out of such proceeds.   It clearly intended to provide for the payment to the plaintiff of the proceeds of sales as they should be received by the defendants; but we think the provision was plainly intended as security and assurance for the payment of the debt already due, and that which should become due for the manufacture of machines, and not as a substitute for either.   By its terms, it is to continue in force only until the defendants shall have liquidated their indebtedness to the plaintiff, which is elsewhere in the contract stated to be about $8000.   It cannot supersede the right of action provided for in the former part of the contract, for it is a temporary provision, which may be

terminated by the defendants at any time. It would be a strange construction to hold that it suspended the plaintiff's right of action for machines delivered until the defendants' debt should be liquidated, and would then revive it. If susceptible of that meaning, it is not credible that the plaintiff would agree to fill the defendants' orders to an unlimited extent, relying solely upon the defendants' disposition and ability to sell and account for proceeds, assuming the loss of interest, and the risk of the state of the market, the destruction of the property, and the insolvency of purchasers, while the defendants should be indebted to them, with the provision that, when the indebtedness should cease, their right of action against the defendants should revive.

3. On November 16, 1866, the contract of February 20 was modified by a provision that the plaintiff should be exclusively entitled to receive the payment for machines sold, and should pay over to the defendants one fourth of the surplus of receipts above the cost of machines. The defendants' fifth prayer for rulings was, that, under the agreement thus modified, the defendants were agents of the plaintiff to sell its property, and liable, if at all, only for money had and received. This ruling was properly refused. The change in the contract was in order to perfect the security intended to be given to the plaintiff, by making it plain that it had a right to receive proceeds of sales and to make collections. The defendants still owned the machines, and had the right to make sales, and debts for machines sold were due to them; the plaintiff had a right to the proceeds, and a right to collect such debts, as security for its indebtedness. This would be the construction of the contract apart from the evidence of the conduct of the parties; it cannot be said that the auditor erred in giving that meaning to it with the aid of that evidence.

4. The sixth, seventh, and eighth requests relate to the matter of the delivery of machines. The auditor's report finds that there was no failure to deliver any machine as soon as it was completed and ready for delivery, except what occurred before September 20, 1866, and that for such failures the defendants have sued, and recovered damages. The auditor did not allow for the cost of any machine not delivered, and the defendants, having recovered damages in an action for the plaintiff's breach

of the contract in not delivering machines according to its terms, cannot recoup them in this action, even if they had set up that defence in their answer.

The defendants contend that there was no sufficient evidence of a delivery of machines, and that a delivery was found by the auditor upon the application of an erroneous rule of law. The contract required that the machines should be delivered to the order of the defendants, and they were to pay the expenses of boxing, packing, and transporting the finished machines. The machines were all completed under the orders of the defendants, and held subject to their order. This was all the delivery that the plaintiff could make, and it satisfied the contract. The defendants cannot be permitted to say that there was no delivery because they refused or neglected to order machines to be shipped. The contract expired in 1869. The action was brought in 1873. All the machines had been actually delivered on the orders of the defendants except four job-presses, and perhaps two or three super-royal presses mentioned in the report, and they had been finished and held subject to the defendants' order. The finding of the auditor was fully sustained by the evidence and the law.

The fact that the plaintiff's assignee in bankruptcy sold the two super-royal machines, whether they had been actually delivered and returned, or had remained subject to the defendants' order, could not prevent the plaintiff from recovering the cost, he giving credit for the proceeds of the sale.

5. After certain presses had been sent, on the orders of the defendants, to purchasers, they were returned for some fault or defect, and were repaired. The objection to the allowance of the cost of such repairs, stated in the ninth request for instructions, is that they were made after the termination of the contracts. Whether the work is to be considered as done in the completion of work commenced before the expiration of the contracts, or as work done upon property of the defendants which had been delivered to and received by them, the charges were properly allowed.

6. The eleventh request is based upon a misapprehension of the auditor's report, which finds that the entries in the books were verified by the testimony of the foreman.

7. The twelfth request for instructions relates to charges transferred to the books from memoranda kept in a book, or from a memorandum made by Tobey, the treasurer and bookkeeper of the plaintiff. This book was annexed to the deposition of Tobey, which was taken on written interrogatories. The book was referred to in the interrogatories, and no objection was made to them. The book was therefore evidence in the case as part of the deposition of Tobey, (Gen. Sts. *c.* 131, § 29,) and also appears to have been verified by the testimony of the foreman. The Tobey memorandum was in connection with evidence which is not reported, and the auditor finds, as the effect of these memoranda, that the items were before him to be allowed or disallowed as the plaintiff should succeed or fail in proving them. He found upon all the evidence in the case that they were proved.

8. The asserted fact upon which the thirteenth request is founded is not sustained by the report. The charges were allowed by the auditor, and there can be no objection to his decision, that, if they were satisfactorily proved by any evidence, they were not to be disallowed because they were not proved by the books.

9. The tenth, sixteenth, seventeenth, twentieth, twenty-first, twenty-second and twenty-third requests are repetitions, in different forms, of points which have already been considered, and need not be further referred to.

We see no error in any refusal to give the rulings requested.

*Exceptions overruled.*

*C. E. Washburn,* for the defendants.

*T. M. Stetson,* (*L. L. Holmes* with him,) for the plaintiff.